**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| LATHAM & WATKINS LLP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:23-cv-1486 (CMH/LRV) |
| ) | |
| LW-KIS.COM, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Latham & Watkins LLP's Motion for Default Judgment (Dkt. No. 20). No representative for any of the domain names named in this action, LW-FRK.COM, LW-ITO.COM, LWFRH.COM, LWFRP.COM, LW-FRO.COM, LW-FRANCE.COM, LW-FKS.COM, LWFNT.COM, LWFNR.COM, LWFRK.COM, LWFRD.COM, LWFIW.COM, LWFRJ.COM, LW-FRJ.COM, LW-FRG.COM, LW-FRH.COM, LW-FRD.COM, LW-FRN.COM, LW-FCC.COM, LW-FIW.COM, LWFEU.COM, LW-FRU.COM, LWFRO.COM, LWFRG.COM, LW-FRP.COM, LWFCC.COM, LW-FRL.COM, LWFRNE.COM, LW-FRNE.COM, LW-FRNC.COM, LWFRN.COM, LWFRR.COM, LW-FRR.COM, LWFRNC.COM, LWFRANCE.COM, and LWFRANCES.COM (the "Defendant Domain Names"), has responded to Plaintiff's complaint or its Motion for Default Judgment. Pursuant to 28 U.S.C. § 636(b), the undersigned files this Report and Recommendation, a copy of which will be provided to all interested parties.

**I.   Procedural History**

On October 31, 2023, Plaintiff Latham & Watkins LLP ("Latham") filed this *in rem* action against the Defendant Domain Names, asserting one count under the Anticybersquatting

Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d).  (Dkt. No. 1.)  On November 22, 2023, Plaintiff filed a motion for service by publication (Dkt. No. 10), which the Court granted on November 27, 2023 (Dkt. No. 14).  On December 6, 2023, Plaintiff filed a Declaration of Jennifer L. Barry regarding Plaintiff's service in compliance with the Court's November 27 Order.  (Dkt. No. 15.)  On December 22, 2023, Plaintiff filed a Request for Clerk's Entry of Default (Dkt. No. 16), and on December 27, 2023, the Clerk of Court entered the default against the Defendant Domain Names LW-IUF.COM, LW-KIS.COM, LW-FRK.COM, LW-ITO.COM, LWFRH.COM, LWFRP.COM, LW-FRO.COM, LW-FRANCE.COM, LW-FKS.COM, LWFNT.COM, LWFNR.COM, LWFRK.COM, LWFRD.COM, LWFIW.COM, LWFRJ.COM, LW-FRJ.COM, LW-FRG.COM, LW-FRH.COM, LW-FRD.COM, LW-FRN.COM, LW-FCC.COM, LW-FIW.COM, LWFEU.COM, LW-FRU.COM, LWFRO.COM, LWFRG.COM, LW-FRP.COM, LWFCC.COM, LW-FRL.COM, LWFRNE.COM, LW-FRNE.COM, LW-FRNC.COM, LWFRN.COM, LWFRR.COM, LW-FRR.COM, LWFRNC.COM, LWFRANCE.COM, and LWFRANCES.CO.  (Dkt. No. 17.)

On January 4 and January 12, 2024, Plaintiff filed notices of voluntary dismissal of Defendants LW-IUF.com (Dkt. No. 18), and LW-KIS.com (Dkt. No. 26), respectively, which the Court granted on January 5 and January 17, 2024.  (Dkt. Nos. 19, 27.)  On January 9, 2024 Plaintiff filed its Motion for Default Judgment as to the remaining Defendant Domain Names.  (Dkt. No. 20.)  On January 26, 2024, the undersigned held a hearing on Plaintiff's Motion, at which no representative for any of the Defendant Domain Names appeared.  (*See* Dkt. No. 28.)  Plaintiff's Motion for Default Judgment is thus now ripe for disposition.

II.     **Factual Background**

Pursuant to the complaint, the following facts have been established.[1] Plaintiff, a limited liability partnership organized under the laws of the state of Delaware, is a global law firm with over 3,200 attorneys in thirty-two (32) offices across fourteen (14) different countries. (Dkt. No. 1 ¶ 47.) Plaintiff advises clients on complex legal and business matters and frequently advises on large-scale transactions, high-stakes litigation and trials, and sophisticated regulatory matters. (*Id.*) Since its founding in Los Angeles in 1934, Plaintiff has offered professional legal services under the LATHAM & WATKINS trademark, registered with the U.S. Patent and Trademark Office (Registration Nos. 2413795, 4986824, 4976906, 4968228), and associated logos and terms, including the LW mark, which is shorthand for Latham & Watkins. (*Id.* ¶¶ 49, 54.)

Specifically, Plaintiff uses the LW mark as its profile picture on Facebook, LinkedIn, YouTube, Twitter, and Instagram. (*Id.* ¶ 50.) Plaintiff also owns and operates the <lw.com> domain name, which Plaintiff registered in October 1994, and has continuously used to host its primary website, send and receive emails, and otherwise conduct business around the world. (*Id.* ¶ 51.) Plaintiff's employees' email addresses, which are formatted using the "@law.com" domain, uniquely identify Plaintiff's employees and personnel to clients and other parties. (*Id.* ¶ 52.) Accordingly, the public has come to associate the LW trademark and the domain name with Plaintiff. (*Id.*) Additionally, Plaintiff owns and maintains a large portfolio of "lw" derivative domain names, such as <lwcommunicate.com> and <lwlawcasts.com>, as well as others incorporating letters identifying the countries in which Plaintiff operates, such as <us-lw.com>

---

[1] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision))).

and <uk-lw.com>. (*Id.* ¶ 53.) Through Plaintiff's widespread and continuous use of the LW mark to provide its legal services in interstate commerce, the mark has acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying services originating from plaintiff. (*Id.* ¶ 54.)

In or around April 2023, an unknown third party (or third parties) registered the Defendant Domain Names named in this action, all of which incorporate Plaintiff's LW mark. (*Id.* ¶ 56.) Subsequently, the registrant(s) of the Defendant Domain Names impersonated a Latham partner, Alexandra Bigot of Latham's Paris office, and sent emails to third parties in an attempt to collect payment on falsified invoices. (*Id.* ¶¶ 55, 57; *see also* Dkt. Nos. 1-43 through 1-61; Dkt. Nos. 2-2 through 2-16.) The registrant(s) signed the scam emails as Ms. Bigot, included the LATHAM & WATKINS trademark in the signature block, inserted the address for Plaintiff's Paris office, and included a link to Plaintiff's legitimate website. (Dkt. No. 1 ¶¶ 58–62; *see also, e.g.*, Dkt. No. 1-41.) Several third-party recipients contacted Plaintiff about the scam emails that used the Defendant Domain Names, which were sent to at least fifty (50) third parties. (*See* Dkt. No. 1 ¶¶ 61–62.)

### III. Legal Standard

Federal Rule of Civil Procedure 55 provides that default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a)–(b). Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), conclusions of law or "allegations regarding liability that are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH*

4

*Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014).  Before entering default judgment, therefore, the Court must determine whether the facts, as alleged in Plaintiff's complaint, state a claim for relief.  *JTH Tax, Inc.*, 8 F. Supp. at 736 (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).  The Court must also find that there is subject-matter jurisdiction, personal or *in rem* jurisdiction over the defaulting defendant, and that venue and service of process are proper.  *See LendingClub Bank v. LendingClub.com*, 122CV484AJTJFA, 2023 WL 2581308, at *8 (E.D. Va. Mar. 20, 2023) (setting forth jurisdictional and service requirements in ACPA default judgment action).

**IV.   Jurisdiction and Venue**

The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, because this case arises under the ACPA, 15 U.S.C. § 1125(d).  Additionally, the Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2).  Section 1125(d)(2)(A) provides that the owner of a mark "may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if–

> (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office . . . and
>
> (ii) the court finds that the owner–
> (I) is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under paragraph [(d)](1); or
>
> (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph [(d)](1) by–
>
> > (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain

> name at the postal and e-mail address provided by the registrant to the registrar; and
>
> (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A).

Here, Plaintiff's rights in its marks are being violated by the registration and unauthorized use of the Defendant Domain Names. (*See generally* Dkt. No. 1.) Additionally, the registrant(s) of Defendant Domain Names used a privacy service that conceals their identity and location, and Plaintiff has been unable to ascertain that information, despite its attempts to contact the registrant(s). (Dkt. No. 1 ¶¶ 3–42, 45; *see also* Dkt. No. 1-2.) On November 2, 2023, in accordance with § 1125(d)(2)(A), Plaintiff sent notice of the alleged ACPA violation, and of its intent to proceed *in rem*, to the registrant(s) of Defendant Domain Names. (Dkt. No. 12 ¶ 11; *see also* Dkt. Nos. 12-39 through 12-76.) On November 30, 2023, Plaintiff also published notice of the *in rem* action in *The Washington Post*, as directed by the Court. (Dkt. Nos. 14 & 15.) Despite these actions, no representative for any of the Defendant Domain Names has come forward. Accordingly, because Plaintiff has been unable to find a person who would have been a defendant in this ACPA action—despite its diligence in accordance with the statute—and is otherwise unable to obtain *in personam* jurisdiction over the registrant(s), the undersigned recommends a finding that the Court has *in rem* jurisdiction over the Defendant Domain Names. *See* 15 U.S.C. § 1125(d)(2).

Finally, venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which provides that an *in rem* action may be brought in the judicial district in which the domain name's registrar, registry, or other domain name authority is located. Here, Verisign, Inc. is the registry for .COM

top level domains, including the Defendant Domain Names, and is located within this District, in Reston, Virginia. (*See* Dkt. No. 1 ¶¶ 45–46.) Thus, venue is proper.

V.   **Joinder of Defendant Domain Names**

Pursuant to Federal Rule of Civil Procedure 20(a)(2), multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Additionally, under Federal Rule of Civil Procedure 21, the Court may, on motion or "on its own . . . on just terms, add or drop a party," including when doing so would not affect the joined parties' substantive rights and would not otherwise cause prejudice to those parties. Fed. R. Civ. P. 21; *see Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012). Here, the undersigned finds that, under Rule 20, joinder of the Defendant Domain Names in a single action is proper because the facts established by the complaint "raise common questions concerning the distinctiveness of Latham's trademarks and the common indicia of bad faith registration" of the Defendant Domain Names. (Dkt. No. 21 at 3–4.) Additionally, the Court may join the Defendant Domain Names under Rule 21 because "none of the defaulting defendant domain names are prejudiced by joinder, as their liability is established by their own default, not the default of any other defendant domain name." *LendingClub Bank*, 2023 WL 2581308, at *4. Accordingly, the undersigned recommends a finding that joinder of the Defendant Domain Names is proper.

VI.   **Service of Process**

Pursuant to Federal Rule of Civil Procedure 4(n)(1), in an *in rem* action authorized by federal statute, "[n]otice to claimants of the property must be given as provided in the statute or by

serving a summons under this rule." Fed. R. Civ. P. 4(n)(1). Under 15 U.S.C. § 1125(d)(2)(B), the following actions outlined in § 1125(d)(2)(A)(ii) shall constitute service of process:

> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and email address provided by the registrant to the registrar; and
>
> (bb) publishing notice of the action as the court may direct promptly after filing the action.

As stated above, Plaintiff has satisfied these requirements by: (1) sending notice to the registrant(s) of Defendant Domain Names, via email and mail on October 13 and November 2, 2023, of the alleged ACPA violation and of Plaintiff's intent to proceed under the statute's *in rem* provisions (Dkt. No. 12 ¶¶ 8, 11); and (2) publishing notice of the *in rem* action in *The Washington Post* on November 30, 2023. (Dkt. No. 15 ¶ 5; Dkt. No. 15-2.) Accordingly, the undersigned recommends a finding that Plaintiff has properly effectuated service of process of this *in rem* action under the ACPA.

## VII. Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a) and the notice published in *The Washington Post*, anyone making a claim to any of the Defendant Domain Names was required to file a responsive pleading by December 21, 2023—twenty-one (21) days after notice of the action was published in accordance with 15 U.S.C. § 1125(d)(2). (*See* Dkt. No. 16-1 ¶¶ 8–9; Dkt. No. 15-1; Dkt. No. 15-2.) No responsive pleading has been filed, and the time for doing so has since expired. On December 22, 2023, Plaintiff filed a request for entry of default against Defendant Domain Names (Dkt. No. 16), which the Clerk of Court entered on December 27, 2023 (Dkt. No. 17). Accordingly, because notice of this *in rem* action was proper and no one has made a timely claim to any of the Defendant Domain Names, the Clerk of Court properly entered a default as to Defendant Domain Names.

## VIII. Liability

Because a default has been entered, the factual allegations in Plaintiff's complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *JTH Tax, Inc.*, 8 F. Supp. 3d at 736. In this case, Plaintiff is pursuing default judgment under the ACPA, which provides that a mark owner may file an *in rem* civil action against a domain name if the domain name "violates any right of the owner of a mark" that is registered with the USPTO or otherwise protected under the statute. 15 U.S.C. § 1125(d)(2)(A). To prevail on an ACPA claim, therefore, Plaintiff must first demonstrate that it has a protectable interest in a valid trademark. *See Wagner v. lindawagner.com*, 202 F. Supp. 3d 574, 579–81 (E.D. Va. 2016). Once it has established a protectable interest in a valid mark, Plaintiff may obtain relief under the ACPA if it demonstrates: "(1) the party using the domain name 'had a bad faith intent to profit from using the . . . domain name'; and (2) the domain name is 'identical or confusingly similar to, or dilutive of [a] distinctive and famous . . . [m]ark.'" *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 797–98 (4th Cir. 2023) (quoting *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011)).

As an initial matter, Plaintiff has established a protectable interest in the marks at issue. The ACPA protects both registered marks as well as unregistered common law marks. *See* 15 U.S.C. §§ 1125(a), (c), (d)(2)(A)(i); *B & J Enters. v. Giordano*, 329 F. App'x 411, 416 (4th Cir. 2009). Here, Plaintiff has registered the LATHAM & WATKINS marks with the U.S. Patent and Trademark Office (Dkt. No. 1 ¶ 54), which are valid and subsisting, including Registration Nos. 2413795, which is described as "[p]roviding information in the field of law via a website on global computer networks and legal services." (Dkt. No. 21 at 7.) Plaintiff's registration of the LATHAM & WATKINS mark constitutes "*prima facie* evidence that the mark is at least descriptive and

9

ha[ve] acquired distinctiveness." *Central Source LLC v. annualdcreditreport.com*, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001)); *see Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) ("Because the PTO may not register a generic mark, the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection."), *abrogated on other grounds by Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).

Additionally, since its founding in 1934, Plaintiff has offered professional legal services under the LATHAM & WATKINS mark and associated logos and terms, including the LW mark, which is shorthand for Latham & Watkins. (Dkt. No. 1 ¶ 49.) Plaintiff uses the LW mark across its promotional channels, including as its profile picture on Facebook, LinkedIn, YouTube, Twitter, and Instagram, to identify itself and its services to the public. (*Id.* ¶ 50.) Plaintiff has also owned and operated the <lw.com> domain name since 1994, and uses this domain name to host its primary website, send and receive emails, and otherwise conduct business around the world. (*Id.* ¶ 51.) Indeed, Plaintiff's email addresses are formatted as: [FirstName].[LastName]@lw.com, a format that helps identify Latham personnel to clients, opposing counsel, and other stakeholders. (*Id.* ¶ 52.) Through Plaintiff's widespread and continuous use of the "LW" term to provide its legal services in interstate commerce, the LW trademark has acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying services originating from Plaintiff. (*Id.* ¶ 54.) Accordingly, based on these facts, the undersigned recommends a finding that Plaintiff has demonstrated an enforceable right in the LATHAM & WATKINS and LW marks, and that the marks have acquired distinctiveness. *See Wagner v. lindawagner.com*, 202 F. Supp. 3d at 580 ("Secondary meaning exists if in fact a substantial

10

number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." (quoting *Perini Corp. v. Perini Const.*, Inc., 915 F.2d 121, 125 (4th Cir. 1990))).

Plaintiff has also established the registrant's bad faith intent to profit from the marks. Under the ACPA, bad faith intent may be determined by weighing the following nine factors, none of which is dispositive:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

11

>   (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i); *see Prudential Ins. Co. of Am.*, 58 F.4th at 798–99 (the "ACPA allows a court to view the totality of the circumstances in making the bad faith determination" and a court "need not 'march through the nine factors seriatim'" (quoting *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001))); *see also Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) ("[A] court need not consider every factor in each case . . . .").

Here, factors 1 and 2 support a finding of bad faith because the Defendant Domain Names do not reflect the trademark or intellectual property rights of the registrant(s) or consist of the legal name of the person or a name that is otherwise commonly used to identify that person. Similarly, under factor 4, the Defendant Domain Names have no noncommercial or fair use of the marks in a site accessible under the domain names; instead, as relevant under factor 5, the registrant(s) used the Defendant Domain Names to attempt to deceive individuals into believing that they were communicating with an employee of Plaintiff, with the goal of obtaining payments from those individuals for fraudulent invoices. (Dkt. No. 1 ¶¶ 57–58, 62; *see also* Dkt. Nos. 1-43 through 1-61; Dkt. Nos. 2-2 through 2-16.) The scam emails, which attempted to appear legitimate by including the LATHAM & WATKINS mark, the address of Plaintiff's Paris office, and a link to Plaintiff's legitimate website, even vaguely threatened the third-party victims to "resolve" the invoices immediately to "avoid other accusations." (Dkt. No. 1 ¶¶ 57–58, 62.) This strongly weighs in favor of a finding of bad faith. Finally, factor 7 also supports a finding of bad faith because the registrant(s) of Defendant Domain Names took steps to conceal any identifying and contact information. (*See* Dkt. No. 1 ¶¶ 3–42, 45.) In consideration of the applicable factors, therefore, the undersigned recommends a finding that the registrant(s) of Defendant Domain

12

Names had a bad faith intent to profit from the use of those domains. *See, e.g.*, *Latham & Watkins LLP v. Hiring-lw.com*, 1:17CV1368 (LMB/JFA), 2018 WL 3214260, at *2, 5 (E.D. Va. June 11, 2018) (finding bad faith in ACPA action where registrant used domain email address for fake employment recruiting scheme), *report and recommendation adopted*, 2018 WL 3212024 (E.D. Va. June 29, 2018).

Finally, Plaintiff has demonstrated that the Defendant Domain Names are confusingly similar to its marks. *See* 15 U.S.C. § 1125(d)(1)(A)(ii). A domain name is confusingly similar to a mark when a "reasonable consumer 'might think [it was] used, approved, or permitted by [the mark owner],'" or where the domain and mark are "so similar in sight, sound and meaning that they could be confused." *Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F. Supp. 2d 737, 743 (E.D. Va. 2005) (first quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 667 (E.D. Va. 2001), *rev'd on other grounds by* 302 F.3d 214 (4th Cir. 2002), then quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:78 (4th ed. 2004)). Here, the Defendant Domain Names are confusingly similar to Plaintiff's marks because each incorporates the LW mark, usually with the addition of a generic location identifier associated with France. (Dkt. No. 1 ¶¶ 3–40, 56); *see Volvo Trademark Holding AB*, 703 F. Supp. 2d at 568 (finding domain <volvospares.com> confusingly similar to VOLVO mark because the "dominant portion" of the domain was sufficiently similar); *see also LendingClub Bank*, 2023 WL 2581308, at *8 (finding domains including <privatelendingclub.com> and <businesslendingclub.com> confusingly similar to LENDINGCLUB mark). That the registrant(s) operated email addresses using the Defendant Domain Names and purported to be an employee of Plaintiff—while also using Plaintiff's registered LATHAM & WATKINS mark (Dkt. No. 1 ¶¶ 56, 58)—further supports a finding that the Defendant Domain Names are confusingly similar to Plaintiff's marks. *See*

13

*Venetian Casino Resort*, 380 F. Supp. 2d at 743. Accordingly, Plaintiff's complaint alleges sufficient facts, taken as true, to establish a claim under the ACPA.

## IX. Recommendation

For the reasons stated above, the undersigned U.S. Magistrate Judge recommends that the Court: (1) grant default judgment against Defendant Domain Names pursuant to Count I of Plaintiff's complaint alleging a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2); and (2) order that, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), VeriSign Global Registry Services, as the registry for the Defendant Domain Names, must transfer the registrars of record for the Defendant Domain Names to Plaintiff's registrar of choice, Safenames Ltd., and that Safenames Ltd. must take all necessary steps to have Plaintiff listed as the registrant for the Defendant Domain Names.

## X. Notice

The parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to timely object waives appellate review of the substance of this Report and Recommendation and any judgment or decision based on it.

Counsel for Plaintiff is directed to send a copy of this Report and Recommendation to the registrant(s) of Defendant Domain Names at the email addresses associated with those domain names, and to file a certificate of service indicating the date those copies were sent. **The fourteen-day period for filing objections will be begin on the date the Report and Recommendation was sent by Plaintiff's counsel to the email addresses associated with the Defendant Domain Names.**

**ENTERED** this 13th day of February, 2024.

*Lindsey R. Vaala*
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia